May it please the Court, Meagan Deal, Deputy Attorney General, on behalf of Respondent Warden, that we would request to have 10 minutes reserved for rebuttal time. Sure. Your Honors, in this case, the ineffective assistance of counsel at Penalty Phase Claim has been fully litigated in the State Court, but more importantly in the District Court and this Court, and was finally overturned by the United States Supreme Court in 2002. There are no more, you can't go back and redo the claim after it's been fully litigated, and it has been fully litigated. There is nothing more for an evidentiary hearing in this case. The evidentiary hearing that Judge Real granted is simply a do-over, it's simply arguing the same issue, a claim that has already been decided by the highest court in the land. Have you seen the 28-J letter? I have seen the 28-J letter, Your Honor, and it was sent yesterday at 1 o'clock, and I wasn't able to pull the cases until this morning. I reviewed the cases, and they're very interesting, but they're not relevant to this case. They would be very relevant to if this was in the District Court, and if the District Court were deciding for the first time whether to have an evidentiary hearing. That's exactly what Weadry goes to, but we're beyond that. That's already gone on. This already came before the District Court. The shoddy ask for an evidentiary hearing on the Penalty Phase, as well as on the Guilt Phase. Judge Real looked at all the documents and determined that there had already been a sufficient hearing, a full and fair hearing, in the State Court. And he in fact made a set of findings based on those, on existing records, some of which included the issues that they claim they want to raise now, as far as I can tell. Judge Real issued a 95-page order, finding some facts and conclusions of law, exhaustively discussing all of the issues. Exhaustively discussing? Exhaustively discussing. That must have been a Freudian slip, Your Honor. Exhaustively discussing. Let me tell you. I guess my real problem is the same as it was at the time of this day. I understand that he could have been quite wrong in ordering this hearing, but it's a prejudice to the government, which is not a recognized prejudice. And we've just said over and over again, we just, I mean, all the time petitioners are coming in, in cases, and appellants, and telling us they want to have hearings, or not have hearings, and we say that's not something we should mandamus about. Your Honor, I agree. And the reason we fought the petition for mandamus is not just the cost to the State of putting on the hearing, and it's not just the delay. If we had just gone forward and done the hearing, the hearing would have been done, we would be here, everyone would have been asked. But then you could have contested it on appeal, and we would have been in much better shape. Well, we wouldn't have been in much better shape, and that's why I have to disagree, Your Honor. The harm here, the reason we brought this by mandamus, is the great harm to the judicial system, requiring litigants to re-litigate an issue that has been fully litigated at every level. You say great harm to the judicial system? I don't feel harm. Your Honor, there is, okay, the harm here is the untenable prospect that an issue that has always been fully litigated. But really, the harm to the judicial system is the way habeas has been denigrated. That's the harm to the judicial system. Your Honor, is there any case, do you have any case, any case, in which there has ever been a mandamus issued to enjoin a hearing? A single case? Your Honor, the law of the case that we are relying on is the NAACP case that we have cited in our papers. And that's the law of the case, but I'm asking, do you have a case in which mandamus was issued to prevent a hearing, an evidentiary hearing, any kind of hearing, from going forward? Any hearing? No, Your Honor, and I don't, I'm not aware of any case where a district court decided to have an evidentiary hearing on an issue that has already been fully decided and fully determined by the higher court. It's like in this case. This case fully ruled on the guilt phase. And what if it went back and the district court says, okay, I'm going to rule on the guilt phase again. You can't do that. Yes, but he's not doing that. Exactly, but he's doing it on the penalty phase. All right, that's different, that's different. Well, it's not different. Why isn't it different? Because there was a complete and full hearing on the penalty phase in the district court in 1999. A complete and full hearing on every issue, every claim. There was, in fact, no evidentiary hearing, but he decided he didn't need one at that point. There's not a lawyer hearing because the judge determined that the 13 volumes from the petition. Aside from this mandamus question, I think we will do better when we hear from the petitioner as to this claim. But what about the other one, the blood evidence? The blood evidence. Well, that would be a very short hearing. I mean, again, we agree that there would be no, the harm to the state in terms of having a hearing would be extremely minimal and that we would not have brought a petition for mandamus on that. But the fact is there's absolutely no basis for that claim whatsoever. And since the petition for mandamus, the strongest issue is the IAC, which has been already finally determined by the Supreme Court. And so when we're bringing a petition for mandamus, it would have been, we would have been remiss not to bring every element. Now, if I could just briefly speak to this. Let me ask you this. Are you acquainted with the Wiggins case? Excuse me? Are you acquainted with the Wiggins case? Yes, Your Honor. All right. How does that affect this situation? I mean, in Wiggins, what the Supreme Court said was that you have to look not to what effect evidence would have on the entire jury, but you have to look at whether there is a probability, a reasonable probability. I think they said, I'll have to look at my notes, that one juror might have been affected. And, Your Honor, my recommendation would be to change the status. Isn't that a different standard, isn't it? No, what happened is, in Wiggins, the highest court said there was an error that occurred and has to go back for more proceedings. In this case, the highest court said there was no error in the state court. The error was in the district court's comprehensive rulings and this court's rulings. In this case, this is a law of the case issue. That's why we're bringing this. It's a law of the case issue. Yeah, but there are exceptions to the law of the case, aren't there? There are some exceptions, but I'm not aware of any that apply in this particular, in this case, where it does. Actually, not even exactly a law of the case issue. This is probably in your favor, but it's more of a rule of mandate issue. I.e., what did the Supreme Court tell us to do? You know, Your Honor, it's a mandate, it's law of the case, it's collateral, it's false. So, from looking at the cases that I've looked at, I looked at the mandate cases, it fits into that. I think it fits a little bit better into the law of the case. Let me ask this, just off to the side. You agreed at the time of the Supreme Court decision that the case does have to be back in the district court and that there are things that haven't been done. That is totally unrelated. I understand that, but I'm just trying to get my sense. First of all, has anything gone on in the district court in the last couple of years? No. Second of all, what is left in the district court? Just so I have a better sense of the lay of the case. Claims about whether the death penalty, the California death penalty is constitutional. Claims that are routine claims. Unfortunately, I refer to them as sort of the junk claims, and I'm sorry for that appellation, but they're sort of the general claims that the California death penalty law is a violent international law. There are a set of legal, not factually based issues that have never been decided by the district court because you found the penalty phase invalid anyway. Correct. Correct. There are no more factual issues here. What happened is every court that has looked at this has determined that Atta Janian was deficient at the penalty phase. The state court decided that. The district court decided that. And this court decided that. And the Supreme Court assumed that. All right? The question is, that was a factual issue. And that has always been decided by every court in Vishanti's favor. The question that's, the other question is the prejudice prong of the question. That's a mixed question of law and faith. All right. Let's go back to the blood evidence. Aside from the fact that I have a hard time seeing this pertinence, this was a claim that was, I'm just trying to, again, get the lay of it. It was not, it was exhausted in the state court only in the second petition and there's some issue that you are litigating as to whether it was properly exhausted or whether there's a procedural problem, a procedural default relating to it. But aside from that, it was not in the original petition of the district court. Is that right? That's correct. So it was added after the remand. Correct. All right. Are you raising a time of decision with regard to that? Absolutely, Your Honor. And that's the issue that, that issue I didn't raise in this petition because to me that clearly is an appellate issue and that clearly could be resolved on appeal. The Felix v. Nail issue, whether they were allowed to file the second amendment complaint at that late date. And we lost, we litigated that and lost that in the district court. But to me that clearly is an appeal issue that can be determined on appeal. Well, everything could be, I mean, all the procedural issues could be determined on appeal, too. But if you're looking for a clear error, it seems to me that's the clearest problem. But if it wasn't raised below at this point, then you can't review it. Could you raise in the district court with regard to the evidentiary hearing the Nail issue? Yes. Okay. I'm involved on that ground. Did the district court rule on anything or did you just issue an order to have an evidentiary hearing? It just issued an order. So it never really denied it or it never really ruled on any of your issues including the procedural issues with regard to the blood evidence? There was a motion for me to amend the second, for me to file a second amendment petition. That motion we opposed on the grounds of timeliness Felix v. Nail. That motion was moved against us. After that, there was a motion for evidentiary hearing on these three claims. So ours came on the blood evidence. But all the procedural questions with regard to whether there was an adequate state grant and so on are on the same state. There's no reason why they couldn't be decided on appeal and they would be decided on appeal. So are you essentially telling us that if we don't agree with you on the first grant that you agree that there shouldn't be amendments in the second one? Is that what you're saying? What I'm saying is that the IAC grant is the most critical to us. It's the grant that creates the most harm to the judiciary and to the state and that there's no reason to have an evidentiary hearing on the blood evidence. But if it had been the blood evidence alone, we probably would have proceeded by appeal. What's the harm to the state? The harm to the state is that the state's inability to execute its criminal laws to protect the innocent and to punish the guilty. That's such a blotchet that the Supreme Court called it a severe precedent for the state. Let me just ask you that. How many people are there on death row? There's close to 700 people on death row. And how many people have been executed in the past since the death penalty was reinstated? Since the death penalty was reinstated, it's the number I'm not expecting. So it's 11 to 13. It's somewhere in that number. Currently, there's a de facto moratorium on death penalties because of other litigation involving the procedures for changing the lethal injection and whether the state... Well, that makes sure your pressure is particularly small for a trial, doesn't it? Your Honor, again, if I can get back to this, to me, this court and any court has no actual power. This court has three... We're not asking for any power. Our question right now is do we enjoin the district court or do we prevent the district court from doing a fairly routine thing for a district court to do, which is to hold an evidentiary hearing, even if it made a big mistake about that. And, Your Honor, that could lead to the untenable result of possibly a different outcome from what the highest court of the land... Well, we can worry about that if and when it does. If it also not. Your Honor, in this case, this court ruled conclusively on the guilt phase issue. What's happening here is as if we go back to the district court and the district court says, oh, okay, well, I'm going to have another hearing on the guilt phase issue. Well, I mean, frankly, I have a very hard time seeing what the hearing's going to be about on the penalty phase because the issue both in the state court, in this court, and in the Supreme Court was prejudice, and that's not really a fact question, so I don't know what the hearing's going to be about. Exactly. But still, I feel very uncomfortable telling the district court not to have a hearing if he wants to have a hearing. But if the hearing's not happening... As opposed to saying, it doesn't matter what happened at that hearing, you should have held the hearing later on. I mean, I think it's extremely unlikely that anything's going to happen at that hearing that's going to make any difference, and we would have been much further down the road now if we had just gone ahead with that hearing. We would have been much further down the road, but again, respectfully, Your Honor, I do contend that respect to the judiciary is a critical issue, a very important issue, for state and federal courts, and that if you have rogue trial court... You're kind of... Don't call him a rogue trial judge. I think that's out of line. All right. I apologize. I always draw that. But if you have a trial judge who's going back and relitigating issues that have already been decided by a higher court, what you have is the lack of respect of the district court for the highest court, and the power of this court depends totally on the respect of the citizenry for the court system. And if you don't have even the judges respecting our hierarchical nature... Well, we don't have prosecutors respecting the judicial system either. And that's not a good thing. That's not a good thing. It goes on every day. Huh? Well, I mean, the other... What concerns me is, obviously, if we were to do this, it would be a precedent. And, frankly, we sit on these motions panels all the time, and we have people coming in wanting us to issue mandatements about this, that, and the other thing that's going on in the district court. And it's usually... And in the criminal cases, it's usually the prosecutors who come in and say, well, you can't do that. Worry about it later. And I understand your... So even if we were to try to narrow down the class that you're talking about, we would have to say whenever there's a collateral estoppel claim or whenever there's... Whenever there's a case that has been finally decided by the United States Supreme Court, and it's not precedent-setting this court, it would simply be following Cato v. Davis and NAACP versus Alabama. And what those cases say is, once the Supreme Court has finally ruled on an issue, that's the final decision. You cannot go back and re-argue it. But, you know, we have this intervening decision. We just... From the United States Supreme Court that we talked about earlier. And, uh... The intervening... The Wiggins case. The Wiggins case. The Wiggins, in a sense, sets out a different standard. One juror. One juror. Your Honor, my ignorance of the Wiggins case, was that a case that had already gone to the Supreme Court before? Was that open second time up to the Supreme Court? Moreover, she'll only have had the prejudice standard. So I would think it would be helpful if we could hear from the petitioner at this point. Okay. The petitioner. I don't want the petitioner. Good morning, Your Honor. It speaks to the court. My name is Stacia Piekart. I'm here on behalf of the Real Party of Interest, John Brasciotti. Respondent... Excuse me. The warden makes assumptions        And, uh... And, uh... And, uh... And, uh... And, uh... And, uh... And, uh...   that's bullshit. At an evidentiary hearing at this juncture that would affect the prejudice issue because, as I understand what happened, is that the California Court of Appeals and Supreme Court, assumed Supreme Court, assumed, um, laid out all of the allegations about ineffectiveness and assumed that they're true. Assumed that everything that you said had— went wrong, went wrong. And then decided a prejudice issue. What is an evidentiary hearing going to— what kind of light is it going to throw on the prejudice issue? Well, the California Supreme Court acknowledged that the trial counsel was ineffective regarding the presentation of Ms. Kuzak. No, they acknowledged he was ineffective in every way you said he was ineffective. Exactly. But then what they held was at 351 it assumed that petitioner could not support the, um, that petitioner was on drugs, could not be supported at the time of the Kuzak assault. Also that it assumed that it stated petitioner has not shown Agajanian's failure to prepare or meet the Kuzak was prejudicial. However, what the court left out was that the Kuzak testimony was originally held inadmissible by the trial court. It was not going to come in because of a prosecutorial misstep. It was not coming in. Then, counsel does not learn Specifically, what kind of evidence are you going to put on this without throwing a light on that? We have our stricken expert who will testify about how counsel, competent counselor should prepare for a penalty case, prepare for a capital case by obtaining the police reports for example. Didn't the, didn't the California court assume that? That was, that was ineffectiveness. They did, but they completely missed that the Kuzak came in only because, only because of counsel's presentation, ineffective presentation of Well, why wouldn't it have come in anyway on a penalty case? The trial court held it inadmissible because On the guilt case, but why wouldn't it have come in anyway on a penalty case? Well, it didn't. The trial court held that it was, could not come in Kuzak's testimony. It held the fact of the Schofield conviction could come in. But the Kuzak Wasn't that at the guilt phase and not the penalty case? I could be wrong, but that's what I thought. I'm sorry. I thought that was at the guilt phase that all that happened. It, it began, the problem began with at the guilt phase. Right. When counsel presented Mr. Bishotti's testimony and elicited from him facts that the district attorney rebutted by the presentation of the Schofield conviction. Right. Now the prosecutor was very aware that he didn't, he felt that he was inviting error, he would invite error had he permitted Kuzak to testify. Right. And he kept it limited to the Schofield conviction. However, he also brought in several photographs of, of Schofield and more importantly of Kuzak's knife wounds at the guilt phase. So the jury heard that. They convicted him Okay. Quickly. Right. Then, when it comes to the penalty phase, the case in aggravation, the district attorney sought to present Schofield, excuse me, Kuzak's live testimony. The court sous-espanté, trial counsel did not even think of this. The court held the DA to its notice of aggravation and said no, it says you will only present No, I said because he hadn't notified of that. Yes. So that is how the case was. And competent counsel would have taken advantage of that and stayed away from the Kuzak information. Mr. Eggejanian did not. He then presented from penalty phase witnesses, family, Mr. Brashadi's nonviolence. What did the district court rule about that in its original judgment? Okay. So what is the hearing going to do with that? Well, when we were remanded back to the district court, we moved for summary judgment on this claim based on the district court's prior order filing. However, we moved for it under D2 because the state court relied, excuse me, the state  the state court to make an unreasonable determination of the facts. This is all about prejudice. I mean, you can call it law, but it's the same thing whatever you call it. It's essentially a legal determination because it's on a cold record. It doesn't deal with the facts. So, we were given  in Mr. Rashadi's post-conviction review to give the court the opportunity to weigh trial counsel's ineffectiveness with regard to the Kuznack testimony with the lay testimony about mitigation and then do the appropriate weighing testimonies   Kuznack testimony. It's necessary. Isn't that what the district court did the first time? He discussed this issue and he spent 85 pages doing that and then he did a prejudice ruling after all that. And our prejudice ruling has been overturned and I'm just having a hard time seeing what's factual about this. What happened in the district court and in this court was analysis under D1. What do you mean by that? It was a prejudice ruling. Everybody has agreed on the, including the state court, on the ineffectiveness. So, we were not having any judgment. We have held judge real on prejudice and we thought we were right and maybe we still think we're right but we were overturned on that. So, what's factual about that? Well, I think before we get to the factual, we have to go through the 2254D analysis, which the Supreme Court has told us courts must do as a limit on relief, as a standard of review, whatever it's called. And the Supreme Court, this court, and the district court all reviewed the state court's decision under D1, which is distinctly different than the head of the analysis. In what specific way is applied to a prejudice ruling? And I want to know what is distinctly different under D1 and D2 when you're talking about a prejudice ruling on a set of facts that are not in dispute. We're talking about the state court's unreasonable determination that Mr. Rashadi could not overcome the prejudice of the CUSAC testimony. No, but that was an assessment as a trial record. It wasn't an assessment of any underlying facts about what should have or could have been done because everybody's agreeing on what could and should have been done. Right, but what the state court ignored was that it just assumed the CUSAC testimony was coming in, which was belied by the record. And that's where I believe Wiggins is significant because Wiggins talks about the clear factual error in the state court below. And the district court in its earlier opinion said that. Because that also was still on a cold record. I mean, whether it was going to come in or not come in again is not going to be informed by any facts. Right. However, the United States Supreme Court completely ignored the district court's ruling, completely ignored the district court's fact finding and went straight to the California Supreme Court opinion and found that it was not entirely under D.E. 1. The unreasonable application is circling to the facts. What the California Supreme Court said was that the district court had already made a ruling on that. It didn't need the facts.     judgment on this. But in its earlier ruling, the district court had already made a ruling on that. And the California Supreme Court had already made a ruling on that. Yes, under D.E. 1. You see, by moving for summary judgment, you're taking the position that you really don't need any further facts or evidence, right? I agree. Well, then what's the purpose of an evidentiary hearing? Well, the court felt it needed an evidentiary hearing. It gave no insight into its decision. I mean, as far as I can tell, in agreeing with Judge Berzon, I don't know what further evidence could be developed. But if any were, all it could show, and maybe this is what we all want to show, that the Supreme Court made a mistake, which we can't possibly do. I agree we can't possibly do that, but what I think it would do is show that Petitioner is entitled to relief  D2. But the D2 is the unreasonable factual determination, right? Right. But what your argument is saying is that, well, the Supreme Court looked at it in the wrong way. That's what you're saying. I believe the Supreme Court said it in a way it was presented to it by this Court's opinion, which was a D1 analysis. Again, I really need you to explain to me what you mean by that. What does a D1 analysis mean in this context? In other words, I'm curious when you're dealing with an issue like a prejudice issue. We have the whole record. There's no dispute, as I understand it, that Mr. I don't remember the counsel's name, but that he did not, in fact, have, know about the Pew's Act attack. He didn't look into the records of the earlier conviction. He believed what his client told him. And whether or not he was ineffective for putting on the family members who said he was nonviolent, which is what I understand to the Pew's Act thing, is something you can tell on a cold record. So what are you saying when you're saying that there's some fact, D2, which I take it means if somebody says A and somebody says B and there's a determination to be made, then the question was was it an unreasonable determination. But that's not what we've got here. We've got a completely consistent record that nobody's arguing about. And we need to apply a legal standard to that, the prejudice standard. What is the difference between whether you do that under D1 or D2? I'm sorry for not answering the court's question. I'm trying to. But what I see the D2 analysis would do is to present to this court and then ultimately the Supreme Court the fact that the California Supreme Court simply determined facts about regarding the two facts testimony. But it did determine facts. It has facts. The records had agreed upon assumed facts. Nobody was  about that. Well, what the California Supreme Court did was ignore the fact that... But that's a legal problem. If you have facts on a record and you don't pay them attention, that's a legal problem not a factual problem. Regarding the posture of this case, then I believe that the  Court did not do that. I don't believe that it uses discretion given the narrow scope of the case. This is a question coming from the other direction. Why is this standard clear error? Because it's such an extraordinary remedy. The courts do not want to impose or interfere with district court proceedings. But why wasn't he in clear error if there was nothing to be gained at all by an evidentiary hearing and the Supreme Court had the whole record on which it could have determined what it did and it decided it? Which Supreme Court? The U.S. Supreme Court. It did not have the whole record. Well, that's their problem. I understand. It asked for no record. I know. And why did it decide things like this? I don't know. But they did it. We're not going to get into that. On that blood evidence? Yes. The blood evidence. This was a sample of blood taken from Mr. Vishati shortly after his arrest. What is your claim? That what? That you wish you had the blood now or, you know, that the state erred because it didn't preserve the blood? And what exactly is your claim? I don't understand. You seem to be arguing it from four or five different directions. I apologize for being unclear on that. It's a claim that the state did not preserve the evidence. Well, what did it do you? I mean, suppose, well, first of all, Trombetta is a claim that was made at trial, and you're making a claim 15 years later, so I don't think it's the same claim, but assuming it is. I mean, what was wrong with not preserving the sample? Trial counsel did no testing, independent testing. But he had the opportunity to do so at the time of trial. That's why I say your claim is not the same as Trombetta because you're making it 15 years later. I agree, but what we're trying to do is what competent counsel should have done was test the blood. But that's a competence of counsel issue. It's not a preservation of evidence issue because the opportunity was there at trial to say, well, tell the trial judge I'd like to have the sample so I can send it out for independent testing. I know that, but the question is, so what? In this case, what does it mean? Has the evidence been preserved? When we tested the sample in 1999, we believed it would give us more information. But 1999 was still well after the incompetent counsel was gone. Yeah. And why years earlier didn't... Well, we're performing the... We hope to perform the drug testing that Mr. Bishotti  about. We believe that the testing that was done by the state, even though it was not contemporaneous but nearer in time to the events than when you could have tested it, even that testing was too late? Isn't that your claim? I believe, no, our testing is that the state's... Our claim is that the state's testing was incomplete, inadequate. We believe that there was testing that could have extrapolated from Mr. Bishotti's blood that he used cocaine or methamphetamine around the time of the capital... I thought that the records show that he'd done that. I thought that was introduced that he continued to use drugs. After the crime he went back to the hotel and he and Hefner continued to use drugs. And the state's position was yes, it shows cocaine metabolites but that was post crime. Why isn't this an insuperable problem? This was not in the   a record that was there to preserve. And as we developed the claim... In your second minute complaint you say it wasn't. Okay. Thank you for correcting me. We tried to, as part of our guilt phase presentation in the district court, we wanted to test the evidence. And that's how we obtained the sample and were able to test it. And it was... How can you do that years later? Well, if that blood had been properly preserved we could have done that. You obtained the sample but there was no sample? There was a sample. We got a cut of  And our expert testified that this is a result of non-preservation of the sample. So they didn't preserve it properly? Correct. Mr. Heffer's blood is in the refrigerator. I don't think this explanation is anywhere in the paper. When did you get this? Right before the 1999 evidentiary hearing. On the gill face? On the gill face. I see. And the state lab sent it to our lab and they did the testing. I see. They sent it to you but they didn't... So presumably you could have added the non- preservation. That it wasn't preserved is that it wasn't preserved properly is your claim. And that you didn't know that until you got it. Correct. And tested it. Yes. So your answer to the mail thing I guess is that any limit would run from then because that's when the first time you knew that fact. Yes. But you shouldn't add it until many years after that either. I'm sorry? You still didn't try to add it back as a separate claim the non-preservation until many years later after that. But that's because the guilt phase was reversed at that point so there was no reason to? We had stopped to... Correct. We had tested the blood for our IAC hearing claim and it came back negative. And by then we were off into this court with the guilt phase. I assume in the penalty cases it was positive. I see. How does this... Does this Wiggins case help you? Yes it does Your Honor. Wiggins told that where there is a clear factual error by the state court then the state's reliance just highlights the unreasonable ness of its decision. In Wiggins the state court just assumed that these records that trial counsel obtained gave it information that it in fact did not. Do you need to find some exceptions to the law of the case doctrine in order to take advantage of Wiggins? And if so, what is that exception? I still respectfully disagree that we have that problem. The U.S. Supreme Court's opinion only addressed the California Supreme Court's opinion under a D-1 review. Does Wiggins specifically say this is a D-2 analysis? Yes it does. As does the U.S. Supreme Court's decision in... So what was the factual error? I'm still not seeing. What's the factual error? Even of the California Supreme Court? No. Yes, of the California Supreme Court or the U.S. Supreme Court. To assume that Kuzak's devastating quote, devastating end quote testimony was coming in regardless, was coming in at all. In fact, it was not coming in until trial counselor blundered into it with his elicitation nonviolent testimony. But that is an issue that I still don't see as factual. I don't see it as factual in the sense of needing an evidentiary hearing. So it doesn't seem to be  anything. I mean, that's all in the record. Whatever you would want to know about it is in the record. What could possibly happen in an evidentiary  Kuzak was sitting on the question of whether he had clear error to have an evidentiary hearing? What about that point would be eliminated by an evidentiary hearing? We would present a testimony of an expert to testify that competent trial counsel investigates the case. But we all know that. The district court decided that in its earlier opinion. How about the standard that we have in Wiggins where, in this case,   the jury and in Wiggins the emphasis was as to one juror. I think that's true. I think that's true. I believe that standard is important to the case. Because the penalty jury in this case was despite trial counsel's important representation was deliberated for over a day. They sent back two notes indicating that they were still in turmoil about the decision. So I believe that the Wiggins standard will eliminate and bring out the trial counsel's ineffectiveness at the penalty phase, yet the jury still had problems. A jury. Is the state right about what's left in the case aside from the district court level? There are other penalty phase issues. There are 42, actually. The state, however, has not moved for disposition of any of those claims. Petitioner has always been a movement in this case. The state has not moved. There are basically legal issues, yes. The problem here is that an appellate court decides whether    where it concludes that the evidence is overwhelming, but there are other issues that the court has not moved for disposition of. These are issues that really have to go to the jury in the first place, because one never knows how a bit of evidence is going to have, what kind of an effect it's going to have on one juror. And sometimes the length of time they're out for two days on a traffic ticket, so one never knows what is going to     emphasis now in Wiggins is that you can't have a jury judge study study study judge judge judge judge judge judge judge  judge judge judge judge judge judge judge judge judge judge judge judge judge judge just chat I still do not see this as an evidentiary point. Aside from that, the California Supreme Court has said that the petitioner has not shown Aquiltidean failure to meet or counter the evidence about his assault on Kathy Kuzak was prejudicial. It does not suggest that this evidence could have been rebutted. And then they go on, and so they set the whole problem up as being whether given that evidence, there's anything else that would have made a difference. So the question is, what is, what about their point that that evidence should never have come in? Well, the answer to that, and the reason why it's harmless, is because if this court were, if this had gone another way, if it had been remanded to the state court, that evidence would absolutely come in. There's no question that the Kuzak evidence was admissible, admissible. But the trial court in this instance wasn't going to admit it. It does seem admissible, but it wasn't going to admit it for some reason. Because of prosecutorial error. Because the original prosecutor hadn't given notice. But don't you judge prejudice on the last trial, not the next trial? On the next trial, it would absolutely come in. I understand that, but that's not the standard. The standard is, what about that trial? It's not the standard, but it goes to whether the error was harmless or not. No, it doesn't. That's not the way you do that. I mean, there's a very interesting Justice Scalia opinion in the Supreme Court, as they may always forget, about what you're doing when you're trying to decide harmless error, when you're trying to decide what this jury on this record would have done. Correct. The way I look at it, I have kind of a practical bench of mind, is just if it was error, the case would be revanded, it would go back, and at that time the Kuzak evidence would come in. All right, but that's not the standard. The standard is on the actual record in the trial, given everything else that happened in that trial that isn't being challenged, what would have happened? Well, again, I think that the statement from the California Supreme Court has been a little bit overemphasized that that was the only mitigating evidence. The California Supreme Court also talks about the extreme depravity in this particular robbery, where they executed the one young man and very nearly executed the second young man. It was only a grace of God that it wasn't a double murder. And even without Kuzak, he still had the stabbing of Schofield, and he had not a good record. He had an aggravating record. And when we look at Orange County in the 1980s when this was tried, I think that the Supreme Court, California Supreme Court, had a good sense of what was going through the state courts in the 1980s and what the counties were like and what death penalties were likely to come. But this was almost a double murder, wasn't it? How do we know all this is correct that you're telling us? Your Honor. You're just speculating. It's not me speculating. This is what the California Supreme Court has said. This is what the United States Supreme Court has said. What the justices of the California Supreme Court were thinking, what they were aware of, Orange County, LA County, and all of that. Your Honor, respectfully, I think that one reason why the AEDPA is trying to give more deference to the state courts is because of an understanding that the state courts handle criminal cases in much greater volume, and they see a much greater volume of these cases, and they have a better handle on what's going on. Well, I don't. What do you base that on? Well, the California state courts have a much higher criminal case load than a different sort of criminal case load. What does that mean? It means that they're more familiar with what the juries are likely to do and different fact patterns. Oh, come on. How can anybody know that? You know, you never know. Your Honor, what you raised about, like, shouldn't prejudice always, shouldn't we always send it back to the juries to determine prejudice, because who knows what anyone's back? That might have been the right way to handle, say, how our jurisprudence. Maybe that was the right way. However, as our jurisprudence, state and federal, has gone through the judges who are experienced trial attorneys and litigants before they become judges. And most of them are prosecutors. Well, and not all. Yeah, most of them are. But the jurisprudence, both federal and state, has acknowledged that judges are in a good position to determine prejudice. Now, again, that may or may not be a wrong decision, but that is the law as it is. Let's take an applied challenge versus a matter. Well, that's a fiction in the law, you know. The first thing I learned in law school was about fiction. It could be a fiction in the law, but it is the law that we're dealing with. Well, I'm not saying it isn't. I'm just saying it's a fiction. So the question is, suppose we thought that was a glaring hole, and we know there's lots of water under the bridge, in the California Supreme Court opinion, and in that they didn't consider, I don't know if it was raised, but they didn't consider, they assumed that this CUSAC evidence wasn't itself in the record as a result of an effective assistance. And that's the argument, that this was only in the record itself because of the very determination about what to put on in the penalty phase as mitigation evidence to which the whole challenge was directed. So to answer the question with the CUSAC evidence is circular, because it shouldn't have been there at all. So what do we do with that? Well, Your Honor, I think if the court would look back at its own opinion from 2002, at page 1115 of that, this court discussed that extensively, the damage that was done by the CUSAC information that came in. That's a different issue. It's not the damage that was done by it, but whether it should have come in. It still goes back to a mixed question of facts and law. The mixed question of facts and law is the prejudice. That is the decision that was decided by the Supreme Court. Again, rightly or wrongly, I think even the Supreme Court said if they were looking at this, you know, afresh, anew, de novo, their decision, maybe they would have decided another way. And this is one of those issues. You're basically saying even if the California Supreme Court decision was unreasonable in that regard, the Supreme Court's kind of put their stamp on that, and that's the end of it. This is one of those cases that it might have been incorrect, but not objectively unreasonable. That any individual judge or panel of judges looking at it could easily have ruled the other way. But the way that the California Supreme Court ruled on it, whether it was incorrect or not, was not objectively unreasonable. And that, of course, is the standard under Williams v. Taylor. As the Congress says, it's not a question of incorrect. It's a question of whether it's objectively unreasonable. And the United States Supreme Court, in this case, has put their stamp on it, saying that the California Supreme Court's decision was not objectively unreasonable. On a mixed issue of law and fact, which has to be under D1, because as you pointed out, there are no additional facts. All the courts have assumed that Agatanian was deficient. It doesn't matter if he was deficient-er or deficient-est. He was deficient. That's all you need. The decision that the Supreme Court touched was the legal decision of whether that deficiency, which all the courts agree was deficient, if that was sufficient to cause prejudice. Isn't that like a different way of saying that subsection B2 doesn't apply in this case at all because of the way the California Supreme Court attacked the problem, namely assuming all these facts adverse to the state? D2 has applied in the past, but all those decisions have been made. There's no new D2 issues to decide. When the Supreme Court's decision was based on prejudice, that has to be a mixed question of fact and law, so they have to consider all the D2 facts. But they didn't make any. Under your position, the California Supreme Court did not make any factual determinations, so there's no need to hold a hearing as to whether those factual determinations were unreasonable. Isn't that sort of what you're saying? The California Supreme Court obtained a huge number of facts, reviewed the 13 days of testimony in the state court as well as the whole trial thing. They took all those facts in. Under Strickland, as you know, Strickland says you can decide either prong first. If it's easier just to decide the prejudice prong, you don't have to make a ruling on deficiency first. And so the California Supreme Court assumed that Agatini was deficient. And whether that's a difference from a finding that he was deficient, assuming that he was deficient, whether that's a difference from a finding that he was deficient, is a semantic argument that I'm not sure that we would need to go into here. I think the effect is the same. Whether you assume he's deficient or find he's deficient, it's the same result. Then you turn to the prejudice prong, and the prejudice prong is where the California Supreme Court made a ruling and where the United States Supreme Court made a ruling. And you cannot make the prejudice prong decision without either considering, ruling, or assuming that the facts are against you. So there are no additional facts that can be brought out because all the facts are in the record. There's nothing for another evidentiary hearing because all the facts have already, they've been assumed in Vishati's favor, which I would submit is the same as having been found in Vishati's favor in this particular instance. But everything has, all the facts have been assumed to be in his favor, and there's no more facts for him to put on at another additional evidentiary hearing. As counsel said, the evidence they would put on is a strict one, I just wanted to say that he could have investigated, he could have and should have investigated. That's been fully set out in detail in all the written opinions. His performance was pitiful. Correct.  That his performance was pitiful. Pitiful. And so, again, it doesn't matter if it's pitiful or more pitiful. It's the same, once you're pitiful, it doesn't matter how pitiful you are. Then once you hit that deficient standard, which he said, it doesn't matter if you're a minus 10 or a minus 7, because you're still in the minus category. That's probably done just as well without him. Excuse me? Probably done just as well without him. Well, perhaps. Your Honor, if I could address a few other points. One thing I wanted to raise, because I know it seems to be of concern, is this issue of are you setting a poor precedent? Now, the California state courts do have a lot more. That might be a good question, but it's not one you're going to like very much. Right. In California law, the courts are more active in interlocutory appeals or petitions for mandate. Yeah. And I fully understand that the Ninth Circuit is very different from that. The Ninth Circuit practice is not really a state practice. The federal system is different. Very different, and that petitions for mandate are very limited and really should be brought in very extremely limited cases. And I understand that there are a lot of people in our office that do want to, you know, every time there's an adverse ruling, they want to raise it. And personally, I believe it rarely, rarely meets the standard of an interlocutory appeal because it can all be addressed on appeal. And that's my personal philosophy, and that's how I argue in our court. This case I really do think is different, and I think that's because unlike Wiggins, unlike Guidry, and unlike any of the other cases, this has already gone up to the United States Supreme Court, and we do have law of the case. There is law of the case that applies here. And for the district court to go back and try those facts again and possibly come out with a different ruling from what the United States Supreme Court has. The case isn't over, and presumably you could, it could be an evidentiary ruling. I mean, I don't know what the evidence would be, but suppose there was something that there could be evidence on. It could be, I can imagine district courts saying Judge Reel did not explain himself. Look, I'm going to have this evidentiary hearing just to get everything out on the record. I don't know what the Supreme Court meant or didn't mean. So we'll get it out on the record, and we'll go forward, and I'm not going to rely on it because of what the Supreme Court said, but the Supreme Court could rely on it. And it would make a lot more sense to just have that hearing now, get everything that they want to put on the record on the record, and it's not for me, but the Supreme Court can change its mind. And respectfully, Your Honor, that to me is the greatest harm in this case, that the lower court will not follow what has been told by the... No, no, that's not what I'm saying. He could follow it, but he could hold the hearing anyway. It would make some sense, frankly, because given Wiggins, and, I mean, frankly, this case really has a horrible record with regard to, and with regard to ineffectiveness, and as we see more cases coming down the line, including in the Supreme Court, I mean, this one just seems an outlier in how bad the representation was. So it's not impossible that the Supreme Court, you know, looking at it maybe not on a summary adjudication basis, but after an argument, would come to another conclusion. And I'm out of home, because it's in a position to change its own mind. Respectfully, Your Honor, the state's position is that the rule of law and the rule of following the higher court's ruling is really more important than that. And one thing about law of the case, you know, one thing I learned a thousand years back in law school, is law of the case only comes out when the first ruling is wrong. I mean, law of the case wouldn't be a problem if the first ruling was right. You would never be challenging it again, but you're always challenging it, and law of the case always comes into play when the higher ruling is wrong. But there's questions to law of the case. And I'm not aware of any that apply in this case. And, again, I would respectfully suggest or refer the court. But why is that? They're intervening, intervening, changing the law. Again, respectfully. Do you want to brief Wiggins? You know, Vandergin v. Shire was also intervening, changing the law. Vandergin v. Shire, there was no mitigating evidence to put on whatsoever. And the Supreme Court said that was fine. Ron Pill has another change in the law. Wiggins is not a requirement that you always have to put on this evidence. It simply is not. And, again, in Wiggins, it was not the second time up to the Supreme Court. That's the critical difference in this case. The critical difference is the Supreme Court has issued a ruling in this case, and the people firmly believe that the district court is not following the rulings of the court superior to it. Just because it would be helpful to me, what is your argument about why the CUSAC evidence would have come in if the trial court had not been ineffective in choosing to put on this nice-guy, nonviolent evidence instead of investigating and coming up with, on the basis of some knowledge, a mitigation defense? Prior acts of violence, adjudicated and nonadjudicated, are permissible in the felony phase, and that's under the lawful and penal code. All right, so your argument is resting on the argument that you gave me before, that a proper evidentiary ruling would have let this in, and would let it in in a future trial. Well, absolutely, because the only reason it was not let in in this case is because the prosecutor didn't give adequate notice. But it wasn't, so I'm having trouble seeing that. Okay. It was, in fact, let in, so it only came in because of, in this trial, no matter what should have happened. Because this guy's an idiot, this counselor. And it is true that both the California Supreme Court and the U.S. Supreme Court, and maybe we, seem to have missed that problem. And, again, I think if you look at, I think one way of looking at harmlessness of error, this is not a case that couldn't go back and be retried on the felony phase, right? I mean, the rulings that are being made, I see. Do you have any authority for that way of looking at harmlessness of error? Because I think it's flat wrong. No, I don't think. Again, I tend to have a practical bent, so my, the way I. . . It does not make sense. I just think that it's contrary to the litigated, decided cases. It's just, to me, it's like, okay, you did it wrong, so you go back and you do it right, and then you get the same result. But, see, the theory, I mean, just to disperse a little on it, is because of the right to a trial by jury, and it's related to what Judge Fragrance is saying. You have a right to a trial by the jury at which, before whom you were tried, and not just some other jury later on in the second trial. So that's the theory behind it, and there's a very interesting successfully opinion that you should go read. Yeah, and I'd be happy to look that up if Your Honor knows the name. Sixth Amendment. It's basically a Sixth Amendment problem. Are you aware of that? I don't. I've never seen it. Okay. Well, I'll try to look it up, but if it... I'll tell you, we'll put it on exam sheet. Yeah, that would be fine. Thank you. You know, I'd also have to mention, Your Honors, that there was some evidence about the two-sex stabbing that came in at the guilt phase. You know, I mean, there are a lot of questions at the guilt phase that came up about, you know, didn't you, and it wasn't evidence, it was questions of the attorney, but there was a suggestion at the guilt phase of this additional thing. And even if we don't have the two-sex stabbing, we still have the Schofield stabbing where he, you know, he stabbed Schofield for really no reason. I think it was a dispute about a cat or something, but he went out and slashed Schofield's neck, which again is an extremely violent matter, and you have not only the, you know, the completely senseless killing of Dijkstra in this case, but the near-execution of Wolbert, you know, shooting him three times, including in the eye as the man is trying to get up. The executions in this case were so completely senseless... That's not what we're here for. He's a bad person. There's no question about that. There's no question about that, but, you know, you have this law, the way we approach it, involving mitigating circumstances, and there are certainly a lot of mitigating circumstances. You know, the way he was beaten up by his father and goes on and on and on. He just threw out his whole life, and he was just a total mess, this guy. And, you know, he's dangerous, so if he's locked up for the rest of his life, so maybe he'd be better off dead, you know, because have you ever been to death row and looked around? Yeah, it's probably one step into hell if you go over there. So, but that's not our job. You know, our job is to see that people get a fair trial, that their rights are upheld, and that we keep our eye on any changes that may come in the law. And, you know, if the Supreme Court comes up with these new decisions, maybe they're sending a signal to us. You know, they're changing on this whole issue. And so, and, you know, it's, we, look, we probably, I would guess that the Central District of California, I'm just speculating, because I know I checked it once, and I sat on that court as Judge Tashima for many, many years. But my, if I had to guess, I'd say there are probably 2,000 habeas petitions filed every year, and maybe two get granted, maybe two. That's all. You know, it's not a, it's not a, an issue that's, and it's, a lot of them, a lot of them we get, because there are complaints about the way that trials are held in trial courts around the circuit. And, but, you know, we shouldn't complain, because when I first got on the district court in, in 67, the judges did the habeas petitions. But then more and more came. So then we got the magistrate system. Now we've probably got more magistrates than judges, see? And they're, they're doing the work that the state courts don't do many, many times. So, you know, it's a big problem for us, and, and, you know, changes could be made in the, in the state court system. Now, I've talked to attorney generals about this, but, you know, they don't seem to, to worry too much in, in that, in that area. So, and we make rulings, and, and they're disregarded in state trials. We don't, we don't get these from federal judges. We don't get federal habeas very, very rarely. Very rarely. There's some federal habeas. Huh? There's some federal habeas. Very, very, very, very, very little. I can't remember the last one we had, but we get a lot of these. And, and then there's a kind of a general disrespect throughout the country on the, the habeas petitions. That's in our constitution, called the Great Writ, you know. So, and that's what this argument's about. You know, he's a bad person. There's no question about it. The question is whether he's locked up or whether he's executed. That's all. And, and I would agree with what you're saying. You know, maybe if the system were being started afresh, there might be different things. So, we have to look to, in this case, first of all, death penalty, in central and southern districts, death penalty cases are handled only by the judges. They're not handled by the magistrates. So, it's the district court judges who are handling them. And, you know, it's very interesting. What, what, what'd you say? In the central and southern districts, it's the judges, the district court judges who handle the death penalty cases. I'm habeas. They don't go to the magistrates. Even on habeas. The habeas, right, the habeas, yeah. I'm, I'm sorry, we only do state habeas. I know, I know that, but I just wanted to clarify. Yeah, so the state, on the state, federal habeas from state convictions on death penalty cases are handled solely by the district court judges and not by the magistrates. Well, I'm not so sure that's correct. You know, I don't handle every case, but every case I've seen is handled by the magistrates. But I've had, I've had, well, you're right in the sense that it's the magistrate who generally holds the hearings, files a report and recommendation to the district judge, and then it's up to the district judge to go over all this and decide whether to, to sign off on it or not. I have never seen that in the capital case, Your Honor. In this case, Judge Real was going to hold the hearing himself. And Judge Real held a hearing in 1999, at which time he was asked to hold the hearing on IAC at penalty phase, and he determined he had enough information from the record and there were no new facts because the record was certainly replete with evidence of agitation and deficiency. You know, again, we have the whole 13, or 28 volumes, however many volumes from the state court hearing, 13 days, I know. And he looked at other information. He had the whole, he had all those previews before him. He had the whole trial record before him. He also had an additional deposition of agitation before him. He looked at it. He wrote a 95-page findings of fact and conclusions of law. He looked at it exhaustively, exhaustively. Did he, by the way, write that, or was that some version of something done by the petitioner's lawyer? Do you know? Judge Real signed it. Yeah, I'm just curious. Judge Real signed it, and I don't have any other name on it. But you don't know. But you're not going to tell me whether it came from the petitioner's lawyer? Was this one of those situations where they, when he asked for a draft? No, no, no. That's what I'm asking. Petitioner's lawyer did not submit it. That was not submitted by the petitioner's lawyer. I'm not saying Judge Walker is right. I'm asking if one of the litigants is right, and you're saying that. No. I have one last question, which is, did you try to get Judge Real, in the meanwhile, to go forward on the remaining legal claims in the last couple of years? Your Honor, this is Mary Lipsetzer. It's our position in our office that the petitions are there, and once they're fully briefed, it's for the judge to make a ruling on. Our San Diego office does not have a practice of bringing motions for summary judgment. I believe that the Los Angeles office of the DA has more of a practice of bringing summary judgment motions. But it was briefed. All the other issues have been briefed. Yes. They've fully been briefed. We filed a point of authority that was similar to an answer, but we briefed every issue, all the new claims, and all the other claims that were remaining. And the petitioner did, too. And the petitioner did, too. And that was all sitting before the judge. And then the petitioner asked for an evidentiary hearing on these three issues. And I'm not aware of any rules that require motions for summary judgment. Again, his views are, like, a kind of unusual area. But there are different offices of the AG's office handle it different ways, and it's just our practice in San Diego, for whatever reason, that we don't bring summary judgment motions and dispositive motions on that. Do you agree there's nothing about the pendency of this mandamus that would have stopped that from going forward, the rest of it from going forward? Well, I think I could have on the other issues. I don't think I would have done it on these three issues. I don't think these three issues. The other ones. The other three issues, that's correct. But, again, it's just not paying credit where I'm just saying it's the way our offices work. Okay. Can I make a few comments on the blood evidence, just to clarify my understanding of the claim? Yeah, go ahead. Okay, the blood evidence. First of all, the blood was not exculpatory because the shoddy was stolen to buy money to buy drugs and bought drugs after the murder and used drugs after the murder. And so the blood was taken 12 hours after the murder, and it's our contention that you really can't tell very much. You wouldn't be able to tell very much from that evidence what his intoxication level was 12 hours earlier when he admittedly took drugs after the murder. Setting that aside, the evidence, you know, in fact, it is refrigerated under all terms. It's taken to the trial. At the trial, it was, you know, it was analyzed. It was available for analysis by the other side. Everything was totally kosher. The results were presented at trial. What happened at trial in 1983 when this was tried is the police officers would actually read the blood sample and show it to the jury, and then it would go into the superior court evidence. It would be made an actual exhibit. And I think they don't do that now because they don't like holding blood in their evidence room, but that was the standard practice in 1983. And so under Trombetta, Arizona v. Youngblood, there's absolutely no claim, constitutional claim whatsoever. Further, there was no objection ever made at the time of trial as to whether it had been refrigerated or not refrigerated from the time of taking until the time of trial. This is a fact off the record. It was refrigerated, but that's not a fact that's in the record anywhere. And then it was put in the superior court evidence locker. And so to the extent there's some claim that it wasn't preserved accurately, it's never been clear in the petition or here, but it appears that it's a claim that it wasn't refrigerated after the time of trial, in which there's no constitutional requirement for that whatsoever. There's absolutely no federal claim that that has to happen. In terms of if there were any questions about what happened before trial, then the time to bring those up is at trial, and there was no objection or claim whatsoever at trial. And so there was a failure to object, which is a clear procedural default that has been recognized by this court for well over 20 years. So that's my understanding of the question on the blood evidence is that, you know, whether the question is before trial or after trial, and I don't think they're going to clear what they are suggesting, but there's just no constitutional right for preservation after trial, and all the evidence in the state court record is that it was preserved and tested and presented at trial. And if the court has any further questions. Was left with the evidence, was left with the superior court clerk? Typically that's what happens at the time. DUIs, you know, all these cases, the police officer brings in the vial of blood. They show the vial of blood. The criminalist talks about, you know, how it was analyzed and explains how they analyzed it and gives the results, which were here. There was cocaine and benzo, lecmine in it. And then it's made an exhibit at trial or was made an exhibit at trial. So then once it's made an exhibit at trial, it goes into the evidence room, which is not refrigerated or anything. And I don't know if there's additional blood that's been maintained by the Orange County Sheriff's Office, so I can't speak to that, if there's additional blood that was refrigerated or not. But that was the typical practice in most cases at that time. And so it was fully preserved until the time of trial, and then after trial it just went to the evidence room as an exhibit. Well, that's kind of a slipshod practice. It should be changed for clearly. But it's not. But currently there's no constitutional or federal requirement for any preservation of the blood after the time of trial, after the time of conviction. And so there just is no federal claim whatsoever after the time of conviction. The judges many times would place evidence like that in the custody of the police or the prosecution and tell them you have to preserve this evidence and they take it back and refrigerate it. Right. And I've worked on another death penalty case where that was done, unfortunately, at the request of the criminalist who requested that the material be taken back, and it has been refrigerated ever since then. And I think even in the ordinary cases, I think the courts have changed their practice just because they don't want to have these vials of blood in the superior court. You know, that's a biohazard and everything. But it should be changed. I'm not saying that's a good practice. I'm just saying that's what was happening in 1990. That's what they have that you hear about in the lab. They have thousands and thousands of blood samples that they still haven't tested for DNA. Right. And, again, just because I worked on the Robert Thompson case, and I know that in that case the material that did have biological material was all kept in a freezer, you know, from the time of trial until the time. But that was at the request of the criminalist who was thinking about it, you know, and knew that more tests would be coming forward later. I'm not saying that's a good practice or not. I think it's been changed, but it's not a constitutional requirement. And then just to wrap up one other thing, I think that it's certainly our position, and I don't think there's any argument from the shoddy, that currently California has no lethal injection procedures that have been approved by the courts. And so I think that last issue is moot because, of course, the Supreme Court has decided that lethal injection as a whole is not unconstitutional, but there could be questions about the protocol. And California currently – the protocol California was using has been – was determined inadequate by Judge Fogel up in the Morales litigation, and there is now no existing protocol in California. They're working on that, but it hasn't happened. Well, that's been challenged. Lethal injection's been challenged for the past, I don't know, 20 years or so. And in California, that litigation is still going on in Marin County and in the northern district of California, Judge Fogel's courtroom, I know. Yeah. And does the Court have any further questions about this case? No. Thank you. Thank you very much, and the matter is then submitted.
judges: Pregerson, Tashima, Berzon